## PARSONS v. FAIRBANKS et al.

On the twenty-second day of June, 1857, T. H. O. Walton sold a half interest in a ditch to G. W. Walton, who in part payment agreed, from the proceeds of said interest, to pay $5,000 upon two promissory notes, executed by the grantor and one Hall to Parsons.  February 12th, 1858, G. W. Walton sold and conveyed this interest in the ditch to G. V. Fairbanks for $10,500, of which $2,700 was paid at the time but not applied on the notes held by Parsons, and a mortgage given upon the half interest for the balance. Afterwards, G. V. Fairbanks sold to Jonathan Fairbanks, and soon after G. W. Walton gave to Parsons a written acknowledgment, that he had bought the interest in the ditch upon condition to pay $5,000 of its proceeds upon the Walton and Hall notes, and that all moneys due to him upon his note to Fairbanks, were due and payable to Parsons until the $5,000 should be paid. After receiving this acknowledgment Parsons transferred the Walton and Hall notes to Jonathan Fairbanks by indorsement, and took from the latter his note for $5,000, secured by a new mortgage on the ditch : held, that any

Parsons *v.* Fairbanks.

interest which Parsons acquired by the acknowledgment in the Walton mortgage he parted with by the transfer of his notes to Fairbanks; that the last note and mortgage could not be considered a renewal of the $5,000 debt evidenced by the transferred notes; and, that the Walton mortgage was a lien upon the ditch for the balance of the debt secured thereby, over and above the amount of $5,000, superior to any lien retained by Parsons thereon for the payment of the balance due him.

In the absence of fraud or mistake a party cannot escape the consequences of an arrangement voluntarily made by him, because of a misunderstanding of its legal effect.

APPEAL from the Tenth Judicial District.

The facts are stated in the opinion of the Court.

*Z. Montgomery,* for Appellant.

I.   According to the written acknowledgment of G. W. Walton given to plaintiff on the twenty-fifth day of January, A.D. 1859, " all moneys due to him upon his contract of sale to G. V. Fairbanks, were due and payable to plaintiff, as trust money belonging to plaintiff, until the sum of $5,000 should be paid. But, if all moneys due from G. V. Fairbanks to G. W. Walton belonged to plaintiffs until $5,000 should be paid the mortgage held by G. W. Walton upon said ditch property, and which he seeks to foreclose in this action—being a mere incident to said debt—likewise belonged to plaintiff to the extent of $5,000.   Is there any question but that a Court of Equity after the execution of said written acknowledgment, and before the transaction between plaintiff and Jonathan Fairbanks, would have been authorized with all the parties before it in decreeing a foreclosure of G. W. Walton's mortgage for the benefit of plaintiff to the extent of $5,000, and would not any interest which G. W. Walton had in that debt and mortgage have been subject to the superior rights of the plaintiff? " If a trust is created for the benefit of a party who is to be the ultimate receiver of the money, or other thing which constitutes the subject matter of the trust, he may sustain a suit in equity to have the money or other thing directly paid or delivered to himself, for in such a case he is entitled to dispose of it as the absolute owner." (2 Story's Equity Juris. and the authorities there cited; see, also, 1 Greenl. Cruise on Real Prop. 431, 433, 562; 3 American Chancery Digest, 425, 498, Secs. 498, 369.)

II.   The next question that arises is, did the taking of the note and mortgage by Parsons from Fairbanks, for the purpose of making the said $5,000 payable directly to himself instead of having it pass through the hands of G. W. Walton, have the effect to postpone his lien to the lien of G. W. Walton, and thus to place plaintiff in a worse condition, and G. W. Walton in a better condition than before ?   This Court has repeatedly held substantially that the acceptance of a new mortgage, intended to supply the place of an old one and to secure the payment of the same debt, does not deprive the mortgagee of any rights which he had under the old mortgage, and that such a transaction does not in fact create a new incumbrance, but only changes the form of the old one.  (See *Dillon* v. *Byrne*, 5 Cal. 455 ; *Birrell* v. *Schie*, 9 Id. 104 ; *Carr* v. *Caldwell*, 10 Id. 380 ; *Swift* v. *Kraemer et al.*, 13 Id. 526.)

*Belcher & Belcher*, for Respondent.

NORTON, J. delivered the opinion of the Court—COPE, C. J. and CROCKER, J. concurring.

On the twenty-second day of June, 1857, T. H. O. Walton sold an undivided half interest in the Oregon Creek Ditch to George W. Walton, who in part payment agreed from the proceeds of said interest to pay five thousand dollars upon two promissory notes, executed by T. H. O. Walton and Stanford Hall, to the plaintiff, Parsons.   On the twelfth of February, 1858, G. W. Walton sold this interest in the ditch to G. V. Fairbanks for $10,500 27, of which $2,700 was paid at the time, and a mortgage given for the balance, of which three hundred and fifty dollars was paid subsequently.   No part of these payments was applied on the Walton and Hall notes.   Afterwards, G. V. Fairbanks sold this ditch property to Jonathan Fairbanks, but upon what terms does not appear. At this stage of the transactions G. W. Walton gave to Parsons a written acknowledgment and statement, that he had bought the interest in the ditch from T. H. O. Walton upon condition to pay $5,000 of the proceeds of the property to Parsons on the Walton and Hall notes, and that all moneys due to him on his sale to Fairbanks were due and payable to Parsons, until said sum of $5,000

23

should be fully paid.    The sale from G. W. Walton to G. V. Fairbanks was effected by a writing which is held to constitute a conveyance, and a mortgage back to secure the purchase money.  On the first of June, 1859, after the giving of this acknowledgment, Parsons transferred the Walton and Hall notes to Jonathan Fairbanks and took from him his note for $5,000, secured by a mortgage on the ditch.

This action is brought by Parsons to foreclose the mortgage given to him by Fairbanks.   G. W. Walton is a party, and claims a prior lien by virtue of the mortgage executed to him by G. V. Fairbanks.   The decree, in effect, adjudges that the Walton and Hall notes in the hands of Jonathan Fairbanks are a set-off to and a satisfaction of the mortgage held by G. W. Walton to the extent of $5,000, and that the balance of his mortgage has priority over the mortgage of Parsons.   From this decree Parsons appeals.

The mortgage of Walton being of prior date to that of Parsons, the decree is of course correct so far as it rests upon these two instruments alone.   But Parsons claims that by virtue of the acknowledgment in writing made to him by Walton, founded upon or in consequence of the agreement existing between G. W. Walton and T. H. O. Walton, that the former should pay $5,000 on the Walton and Hall notes held by Parsons, he became an assignee to the amount of $5,000 of the mortgage executed by G. V. Fairbanks to G. W. Walton, and that the note and mortgage executed to him by Jonathan Fairbanks was a mere renewal in his favor of the debt of $5,000 evidenced by the Walton and Hall notes and mortgage lien.   On the contrary Walton claims, in effect, that the written acknowledgment given by him to Parsons did not constitute any transfer of his mortgage or any legal obligation upon him, and that if it could be considered as such a transfer, it was only as a security for the payment of the Walton and Hall notes to the extent of $5,000, and that when Parsons took the note and mortgage of Jonathan Fairbanks, and transferred to him the Walton and Hall notes, he voluntarily parted with his claim on the security of the Walton mortgage, and took in its stead the security of the note and mortgage of Jonathan Fairbanks of a subsequent date.

We do not find it necessary to decide whether the transactions

above detailed conferred any legal claim upon Parsons to an interest in the Walton mortgage, as security for the Walton and Hall notes, because, conceding that it did, it appears clear that he parted with all such interest when he transferred the notes to Jonathan Fairbanks. There is a dispute between these parties as to whether the notes for their full amount were transferred by Parsons to Jonathan Fairbanks, or whether they were treated as paid by Fairbanks to the extent of $5,000, and only a balance of about eight hundred dollars transferred. Without deciding that this difference is material, we observe that the proof shows that the notes were transferred simply by an indorsement without recourse, and it does not appear that any payment was indorsed on them; and Parsons, in his replication to Walton's answer, speaks of the notes as having been transferred to Jonathan Fairbanks, and held by him to the extent of the $5,000 as an offset to so much due to Walton on his mortgage. What the witness says, as to its being understood that only a balance after deducting $5,000 was due on the notes, cannot avail as against the written terms of the transfer, and the admission in the replication.

If Jonathan Fairbanks was the debtor, who was bound to pay the Walton and Hall notes, there would be more reason for the claim of Parsons, that the note and mortgage executed to him by Jonathan Fairbanks was a mere renewal of the Walton and Hall debt; but G. V. Fairbanks was the party indebted to G. W. Walton, and whose indebtedness, if any thing, to the extent of $5,000, was assigned to Parsons. It may be conjectured, that there was some understanding between G. V. and Jonathan Fairbanks, that the latter was to pay the debt of the former incurred for the purchase of the ditch property; but there is no evidence of this, and there is no reason to claim that Parsons had been invested with any demand which G. V. Fairbanks might have had upon Jonathan Fairbanks. By the transaction of June 1st, 1859, Parsons acquired not only a direct mortgage to himself upon the ditch property, but also the personal responsibility of Jonathan Fairbanks, to which before then he had no claim; and Jonathan Fairbanks, in return, acquired the personal liability to himself of Walton and Hall on their notes, together with whatever equities attached to those notes,

to be paid out of the proceeds of the obligation and mortgage execution by G. V. Fairbanks to G. W. Walton. Parsons complains that under this view, he is placed in a worse condition by the transaction of June 1st, 1859, than he was in before. There are two answers to this. One is, that if that arrangement was voluntarily made by him, without fraud or mistake of fact, he cannot escape the consequences, although he may have misunderstood what would be the legal effect. The other is, that he received a new consideration, to wit: the personal liability of Jonathan Fairbanks; and it therefore does not appear but that his condition is better. In this view, it is only the case, not uncommon, of a person holding a first mortgage surrendering it, and for a valuable consideration, taking a second mortgage.

Whether there was, under the facts, a binding assignment by G. W. Walton of an interest in the mortgage executed to him by T. H. O. Walton, and hence, whether that mortgage was properly treated as having been satisfied, or offset to the extent of $5,000 by the Walton and Hall notes, we are not called upon to decide— because G. W. Walton does not appeal from the decree. We think the decree is correct so far as it affects the rights of Parsons, the only appellant.

The judgment is affirmed.